

# THE ATTORNEY GENERAL

## OF TEXAS

GERALD C. MANN

**AUSTIN 11, TEXAS**

XXXIIXXXXIXSIIXXXXXX
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-5468
Re: Liability of a motor carrier for
tax imposed by Article XIV of
House Bill No. 8, Acts 47th Legis-
lature, Regular Session.

Your letter of July 20, 1943 relating to the above
captioned subject reads as follows:

"Article XIV of House Bill No. 8 of the 47th
Legislature provides a tax of 2.2% on receipts
earned by Motor Contract Carriers.

"There is an operator in Houston, Texas who
operates under Interstate Contract Motor Carrier's
permit issued by the Railroad Commission of Texas.
He is also operating under I.C.C. permit formerly
issued to another operator but purchased by the
subject concern and approved by the Interstate Com-
merce Commission on September 23, 1941 in MC-FC
15542, and by the Railroad Commission of Texas on
September 27, 1941, Motor Carrier Docket, C-34.

"The concern in question hauls food products
for a nationally known distributor, the merchan-
dise is shipped in carload lots from a point out-
side the State of Texas to Houston, Texas where
the products come to rest, being unloaded in ware-
houses and later assigned and delivered to stores
in incorporated towns within the Houston territory.
In some instances the merchandise is loaded onto
the trucks from the warehouse platform and delivered
direct to the merchants within the incorporated towns.

"This concern, in February, 1936, applied to
the Interstate Commerce Commission for a Contract
Carrier permit to distribute merchandise out of the
Houston, Texas warehouse of the food distributor to
their retail stores within the Houston territory.
The Commission denied the application on the grounds

that the transportation from the warehouse to the retail stores was intrastate traffic and not interstate traffic. It was in September, 1941 that the Houston Contract Motor Carrier purchased the I.C.C. permit referred to above from another Motor Carrier, which he claims gives him the authority to transport the merchandise as interstate.

"Please tell me if the above concern is liable for the gross receipts tax under Article XIV in House Bill No. 8 of the 47th Legislature."

From the several conferences that we have had with your department, we understand that a large chain store corporation operates a number of retail stores within the City of Houston, Texas and in other cities in that area. Said corporation maintains a warehouse in the City of Houston from which merchandise is distributed to its retail stores in accordance with their requirements.

It appears that the carrier in question was refused an intrastate permit by the Railroad Commission of Texas to transport merchandise for the above mentioned corporation. Later, the Interstate Commerce Commission, hereinafter referred to as I.C.C., refused the carrier an I.C.C. permit for the same transportation on the grounds that said transportation was intrastate. See I.C.C. Reports, Motor Carrier Cases, Vol. 4, page 488.

Thereafter, the carrier in question purchased an I.C.C. permit from another individual which was the exact type of permit which he had theretofore been unable to obtain from the I.C.C. and the Railroad Commission of Texas. As to this particular permit, it appears that the I.C.C. found that the particular transportation was interstate and it also appears that the Railroad Commission issued a permit to use the highways in connection therewith upon the same basis.

As is clearly pointed out in the decision of the I.C.C., supra, the transportation in question is intrastate in character and not interstate. It remains however that said transportation is done under authority of an I. C. C. permit and it appears that the Railroad Commission has recognized such transportation as interstate.

It seems to us that the answer to your question depends upon this issue, to-wit: Is a motor carrier subject to the tax imposed by Article XIV, House Bill No. 8, supra, on intrastate business transacted under authority of an I.C.C. permit notwithstanding that the I.C.C. and the Railroad Com-

mission had issued orders, alleged to be final orders, to the effect that such transportation was interstate and had issued permits accordingly?

Article 14, Section 1 (a), H. B. No. 8, Acts 47th Leg., Regular Session, imposes the following tax:

"Section 1.  (a)  Each individual, partnership, company, association, or corporation doing business as a 'motor bus company' as defined in Chapter 270, Acts Regular Session of the Fortieth Legislature, as amended by the Acts of 1929, First Called Session of the Forty-first Legislature, Chapter 78, or as 'motor carrier' or 'contract carrier' as defined in Chapter 277, Acts Regular Session of the Forty-second Legislature, over and by use of the public highways of this State, shall make quarterly on the first day of January, April, July, and October of each year, a report to the Comptroller, under oath, of the individual, partnership, company, association, or corporation by its president, treasurer, or secretary, showing the gross amount received from intrastate business done within this State in the payment of charges for transporting persons for compensation and any freight or commodity for hire, or from other sources of revenue received from intrastate business within this State during the quarter next preceding.  Said individual, partnership, company, association, or corporation at the time of  making said report, shall pay to the State Treasurer an occupation tax for the quarter beginning on said date equal to two and two tenths (2.2) per cent of said gross receipts, as shown by said report. Provided, however, carriers of persons or property who are required to pay an intangible assets tax under the laws of this State, are hereby exempted from the provisions of this Article of this Act."

In order to clarify the scope and meaning of the above Section, the same Legislature enacted H.B. No. 1039 which provides as follows:

"Section 1.  The term 'intrastate business' as used in Article XIV.  Section 1 (a) of House Bill No. 8, Acts of the Regular Session of the Forty-seventh Legislature shall mean and apply only to that portion of revenues derived from transportation subject to the regulation of the Railroad Commission of Texas."  (Underscoring ours).

By the express terms of House Bill No. 8, supra, the tax is imposed on each individual, partnership, company, association or corporation doing business as a contract carrier as defined in Chapter 277, Acts 42nd Leg., Regular Session. The definitions referred to are as follows (codified in Section 1, sub-sections (g) and (h), of Article 911b, V.A.C.S.):

"(g) The term 'motor carrier' means any person, firm, corporation, company, co-partnership, association or joint stock association, and their lessees, receivers or trustees, appointed by any Court whatsoever owning, controlling, managing, operating or causing to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; provided, that the term 'motor carrier' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns.

"(h) The term 'contract carrier' means any motor carrier as hereinabove defined transporting property for compensation or hire over any highway in this State other than as a common carrier. As amended Acts 1931, 42nd Leg., p. 480, ch. 277, § 1."

It is clear to us that the transportation in question is intrastate in character. It is equally clear to us that at least the intercity part of such transportation comes within the purview of Chapter 277, Acts 42nd Leg., supra. Looking only at the provisions of Article XIV of House Bill No. 8, supra, the gross recipts derived from such transportation would be included in measuring the amount of tax due. The confusion results because of the language contained in House Bill No. 1039, supra. This Act in effect defines "intrastate business", as used in Article XIV of House Bill No. 8, supra, as that transportation subject to the regulation of the Railroad Commission of Texas. (Underscoring ours).

In determining the meaning of House Bill No. 1039, supra, we wish to first point out that Article XIV of House Bill No. 8, supra, provided that the tax should be measured not only from gross receipts derived from transportation but also included gross receipts from other intrastate business. It followed that if the carrier also received revenue from the operation of a storage warehouse or from some other source,

this revenue would also be included in determining the amount of tax due according to the literal language of the Act.

It is our opinion that the only meaning and effect of House Bill No. 1039, supra, is to limit the application of the tax imposed by Article XIV of House Bill No. 8, supra, to those gross receipts derived only from that transportation which the Legislature, by statute, authorized the Railroad Commission to regulate. See our Opinion No. 0-5335.

We do not believe that the tax liability of any motor carrier is contingent upon any action or non-action taken by the Railroad Commission of Texas. For example, we do not believe that interstate receipts could legally be included in determining the amount of tax due even though the Railroad Commission thought that the transportation was intra-state and issued an order to that effect nor do we believe, as in this case, that intrastate receipts should be excluded in determining the amount of tax even though the Railroad Commission had years ago issued a permit based upon an order finding the transportation to be interstate. Going a step further, suppose a situation where a carrier was regularly transporting merchandise intercity for hire and had never obtained any kind of a permit from the Railroad Commission. Notwithstanding the lack of any actual regulation, the carrier, in our opinion, would clearly be liable for the tax.

Irrespective of the order issued by the Railroad Commission to the motor carrier in question and irrespective of whether such order may be said to be final or otherwise, we are of the opinion that said carrier is subject to the tax imposed by Article XIV of House Bill No. 8, supra.

Yours very truly

ATTORNEY GENERAL OF TEXAS

LS:fo:wc

By s/Lee Shoptaw
Lee Shoptaw,
Assistant

APPROVED AUG 24, 1943
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/RWF Chairman